# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| MELISSA D. WHICKER-SMITH, | Case No. 1:18-cv-52 |
| Plaintiff, | Dlott, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## REPORT AND RECOMMENDATION

Plaintiff Melissa D. Whicker-Smith filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff asserts two claims of error, both of which the Defendant disputes. As explained below, I conclude that the ALJ's decision should be AFFIRMED, because it is supported by substantial evidence in the record as a whole.

### I. Summary of Administrative Record

Plaintiff has twice sought social security benefits. The instant case represents Plaintiff's appeal of the Commissioner's most recent adverse decision, rendered in 2017. However, Plaintiff first filed an application for disability insurance benefits on October 13, 2010, alleging the onset of disability beginning on September 7, 2010. Plaintiff's first claim was denied both initially and upon reconsideration, as well as in a subsequent decision (after an evidentiary hearing) by ALJ Larry Temin on March 22, 2013. The Appeals Council denied review of that decision on June 24, 2014, and Plaintiff did not

seek further judicial review. Therefore, ALJ Temin's decision became final for purposes of administrative res judicata through March 22, 2013.

On August 28, 2014, Plaintiff filed new applications seeking both disability insurance benefits ("DIB") and (protectively) supplemental security income ("SSI"). In her 2014 applications, Plaintiff initially again alleged a disability onset date in 2010, but she subsequently amended that date to April 18, 2014. Plaintiff's 2014 applications were denied initially and upon reconsideration, following which she sought an evidentiary hearing. On December 12, 2016, Plaintiff appeared, along with her non-attorney representative, and gave testimony before ALJ Peter Jamison; a vocational expert also testified.

Plaintiff was 49 years old on her alleged disability onset date.[1] She completed high school and attended two years of college for nursing. (Tr. 22). She lives in a house with her husband and young adult son. (Tr. 46). She testified to past relevant work as a bakery manager and as an assistant manager, but stated that she did not work after suffering a heart attack in October 2010. (*Id.*)

On February 14, 2017, the ALJ issued an adverse written decision, concluding that Plaintiff is not disabled. (Tr. 18-28). The ALJ determined that Plaintiff has severe impairments of: "disorders of the back, ischemic heart disease, polycythemia vera, affective disorders, anxiety disorders, and somatoform disorders." (Tr. 21). In addition, the ALJ found non-severe impairments of hypertension and hyperlipidemia. (*Id.*) Plaintiff does not dispute the ALJ's determination that none of her impairments, either alone or in

---

[1] Plaintiff changed age categories and was 52 at the time of the ALJ's 2017 decision.

combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (*Id.*)

The ALJ determined that Plaintiff cannot perform her past relevant work, which was considered "skilled," but nevertheless found that she retains the residual functional capacity ("RFC") to perform a restricted range of unskilled light work, subject to the following limitations:

> [S]he can lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently. She can sit six hours, stand four hours, and walk four hours. She can never operate foot controls with the right foot but can frequently operate foot controls with the left foot. She can operate hand controls with the right hand frequently. She can also use the left hand to operate hand controls on a frequent basis. She can frequently handle items with the bilateral hands. Moreover, she can use her bilateral hands for frequent fingering and feeling. The claimant can climb ramps and stairs occasionally but never ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She can never work at unprotected heights or moving mechanical parts. Moreover, she can never work in humidity and wetness, extreme cold, extreme heat, or vibration. The claimant can occasionally operate a motor vehicle. Mentally, the claimant is limited to performing simple, routine, and repetitive tasks. She is able to sustain concentration and attention for two hours at a time, and then requires a break of five minutes. She can interact with supervisors, co-workers, and the public on an occasional and superficial basis. She is limited to tolerating few changes in a routine work setting defined as no[t] more than ordinary and routine changes in work setting and duties. She cannot set her own work goals or make work plans independently of others.

(Tr. 23). Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform a "significant number" of jobs in the national economy, including the representative jobs of routing clerk, inspector, and mail clerk. (Tr. 29). Therefore, the ALJ determined that Plaintiff was not under a disability. The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

3

In her appeal to this Court, Plaintiff argues that the ALJ erred in assessing a physical RFC that was not supported by substantial evidence, and in making an adverse credibility determination. The undersigned finds no reversible error.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

    **B.   Substantial Evidence Supports the ALJ's Decision**

    **1.  Physical RFC Right Hand/Arm Limitations Are Substantially Supported**

Plaintiff's first claim of error seeks reversal and/or remand on grounds that in his 2017 decision, the ALJ improperly determined that she could "frequently and bilaterally

operate hand controls and finger, feel and handle frequently and bilaterally." (Tr. 23).[2] Plaintiff points out that the VE testified that all employment would be precluded if Plaintiff were instead limited to "occasional" rather than "frequent" use of the right hand and arm and to only "occasional" handling, fingering and feeling in her right hand. (Tr. 61).[3]

She complains specifically that the RFC finding that she could "frequently" use her right hand is not supported by substantial evidence, in light of the evidence of decreased sensation and sensory deficits on exam. (Tr. 1491-1497). In addition, she asserts that no treating or examining physician ever questioned her complaints of numbness and tingling in her right arm. Plaintiff argues that it was inconsistent for the ALJ to cite Plaintiff's complaints of numbness, tingling and weakness to find she cannot operate foot controls *at all* with her right foot, while simultaneously finding that she could still "frequently" operate hand controls and engage in frequent fingering and feeling.

It is worth noting that the ALJ's RFC determination concerning Plaintiff's right lower extremity is identical to the finding made by ALJ Temin in the unappealed 2013 decision. (*See* Tr. 74). At that time, ALJ Temin found *no impairment at all* in Plaintiff's ability to use either of her upper extremities. In contrast, ALJ Jamison's 2017 finding, that Plaintiff is limited to no more than frequent use and only frequent handling, fingering and feeling bilaterally, reflects a significant departure from the 2013 RFC determination based upon new and material evidence that supported some level of upper extremity limitations. (Tr.

---

[2] Plaintiff does not challenge the mental RFC determined by the ALJ in this proceeding.

[3] Plaintiff makes no complaint about the ALJ's determination that she could use her left hand and arm "frequently" but argues that the ALJ committed reversible error in his RFC determination of her right arm and hand.

6

18). The sole issue presented in this case is whether the level chosen by the ALJ is substantially supported and within the acceptable "zone of choice."

The undersigned concludes that it is. Plaintiff is right-handed. The ALJ acknowledged Plaintiff's testimony that she has no feeling on her right side, but contrasted that with both clinical records and her report that she does chores, walks her dogs, watches television and does puzzle games on the computer. (Tr. 24). Plaintiff is independent in all activities of daily living and can occasionally operate a motor vehicle, though she testified she no longer does so due to a bad experience with her right leg giving out. (Tr. 25-26, 53). The ALJ also pointed to examination notes by Drs. Raza and Wallace that were largely "unremarkable," including normal motor skills and a lack of tenderness or weakness. (Tr. 25). In addition, during the period of disability from September 2014 through April 2016, Dr. Sarembock's examination notes showed "normal strength, reflexes, motor skills, range of motion, sensation, and gait." (Tr. 25). Dr. Musolino's examination notes also "consistently revealed only mild tenderness over the lower facet area," with "intact strength and sensation… and no evidence of …atrophy or active synovitis." (*Id.*)

Focusing more specifically on Plaintiff's complaints of right sided numbness, Plaintiff reported to Dr. Sarembock that her numbness occurred only "two to three times a month." (Tr. 26). In September 2015, she reported to a neurologist, Dr. Heil, for evaluation of "periods of numbness and tingling but more episodes of numbness on the right side." (*Id.*) However, at that time, she reported that her symptoms would subside "in about an hour" and were worse in her right *leg* than in her arm. (*Id.*, *see also* Tr. 1495). The ALJ summarized Dr. Heil's September 2015 examination findings and treatment records as follows:

7

> On exam, she had full motor strength, symmetric reflexes, and a normal gait. Sensation in the upper and lower extremities was decreased to light touch and pinprick. She was started on B12 injection, which she stated were helpful. Dr. Heil noted in October 2016 that she continued to receive B12 injection as well as oral B12 supplements. His impression was peripheral neuropathy due to B12 deficiency.

(*Id.*)

In support of her contention that the ALJ should have limited her use of her right arm and hand at the more severe "occasional" level rather than the "frequent" level, Plaintiff relies <u>solely</u> upon Dr. Heil's September 2015 examination findings. In her reply memorandum, Plaintiff implies that the ALJ failed to review and evaluate the examination notes. However, the undersigned perceives no error in the ALJ's review of Dr. Heil's records, which the ALJ specifically cited. Nor does the undersigned perceive any error in the ALJ's review of the record as a whole concerning the extent of Plaintiff's upper extremity limitations. A record noting a decrease in sensation does not necessarily translate to *any* manipulative restrictions. While Dr. Heil found that Plaintiff's right and left arm "light touch" and "pinprick" sensations were "decreased from elbow," he did not attempt to quantify the extent of decreased sensation, nor did he offer *any* functional limitations relating to Plaintiff's bilateral decrease in pinprick or light touch sensation. (Tr. 1496-1497). In September 2015, Dr. Heil did not have Plaintiff's complete records, but he later offered a diagnostic impression of a B12 deficiency for which Plaintiff was prescribed treatment.

As the Commissioner points out, no physician or treating professional offered *any* medical opinion that suggested the more severe functional limitation for which Plaintiff now advocates, to "occasional" handling, fingering and feeling with her right upper extremity. To the contrary, state agency physicians included no upper extremity restrictions *at all* in their opinions that Plaintiff could perform some light work, simply

adopting the RFC from the prior decision. (Tr. 27). The ALJ's departure from those medical opinions, to the extent that the ALJ incorporated some upper extremity restrictions, reflects no error.

The ALJ is ultimately responsible for the determination of the RFC, not a physician. *See* 42 U.S.C. § 423(d)(5)(B). Thus, an ALJ may formulate a limitation based on the record as a whole. The RFC need not precisely align with any particular medical source opinion of record, so long as the RFC is substantially supported as it is in this case. Plaintiff herself reported that her numbness and tingling were worse on her right side, but that she experienced more limitation in her right leg than in her right arm. In short, there is nothing in the record that would mandate a greater limitation. *See Mokbel-Aljahmi v. Com'r of Soc. Sec.*, 732 Fed. Appx. 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ… We similarly find no error here.").

## 2. Law Applicable to Credibility Determination

Plaintiff's second claim is that the ALJ committed reversible error when he made an adverse credibility determination, finding that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 24). "The undersigned [ALJ] does not find support for the claimant's allegations that her conditions, individually or in combination, have rendered her totally disabled and incapable of all work activity." (Tr. 28).

The ALJ's assessment of symptoms, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility"

and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as <u>consistent</u> with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added). The new ruling emphasizes that "our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." *See id.* at *11. Under SSR 16-3p, an ALJ is to consider all of the evidence in the record in order to evaluate the limiting effects of a plaintiff's symptoms, including the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*, 2017 WL 5180304, at *7–8; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c) and former SSR 96–7p.

Despite clarifying the basis for the analysis of subjective complaints and corresponding elimination of the term "credibility" from the text in order to avoid "character analysis," SSR 16-3p was not intended to substantially change existing law. *See Banks v. Com'r of Soc. Sec.*, Case No. 2:18-cv-38, 2018 WL 6060449 at *5 (S.D. Ohio Nov. 20, 2018) (quoting explicit language in SSR 16-3p stating intention to "clarify" and not to

substantially "change" existing SSR 96-7p), adopted at 2019 WL 187914 (S.D. Ohio Jan. 14, 2019). Thus, it remains the province of the ALJ and not the reviewing court, to assess the consistency of subjective complaints about the impact of a claimant's symptoms with the record as a whole. *See generally Rogers v. Com'r*, 486 F.3d 234, 247 (6th Cir. 2007).

As stated, the primary distinction between SSR 16-3p and the former SSR 96-7p is the elimination of the word "credibility" and clarifying that the focus of the ALJ's evaluation should be on the "consistency" of subjective complaints with the record as a whole. The elimination of the word "credibility" from SSR 16-3p is semantically awkward in applying prior case law, insofar as virtually all of the case law interpreting the former SSR 96-7p uses the catchphrase "credibility determination." Nevertheless, the essence of the regulatory framework remains unchanged. Therefore, courts agree that the prior case law remains fully applicable to the renamed "consistency determination" under SSR 16-3p, with few exceptions. *See Duty v. Com'r of Soc. Sec.*, 2018 WL 4442595 at *6 (S.D. Ohio Sept. 18, 2018) ("existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.").

Turning to that case law, it is clear that a reversal of the Commissioner's decision based upon error in a credibility/consistency determination requires a particularly strong showing by a plaintiff. Like the ultimate non-disability determination, the assessment of subjective complaints must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility/consistency determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for

11

an ALJ to discount the claimant's testimony where there are inconsistencies and contradictions among the medical records, her testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

In the case presented, Plaintiff complains that the ALJ overly relied upon statements made by Plaintiff during a psychological consultative evaluation dated October 1, 2014, in which Plaintiff reported that on a typical day she will get up, do chores, take the dogs for a walk, sit on the couch, watch a little TV, do puzzle games on the computer, eat and watch TV. (Tr. 743). The ALJ further noted that Plaintiff is independent in all activities of daily living. (Tr. 28; *see also* Tr. 589, 1639, 1770, 1801). Plaintiff argues that the ALJ misconstrued her testimony, because Plaintiff testified at the hearing that she will "try" to do chores like loading and unloading the dishwasher, but has issues due to the loss of feeling in her right arm, which led her to break glass dishes and ultimately to switch to plastic. (Tr. 44). Plaintiff further testified to needing to rest after chores, and that at one point when she tried to traverse stairs to do the laundry, her leg gave out and she fell. (Tr. 54). At the hearing, Plaintiff testified that she no longer walks her dogs because she cannot walk more than half-way down the block. (Tr. 56).

Plaintiff complains that the regulations and case law are clear that the ability to perform minimal daily activities should not be viewed as equivalent to the ability to perform full-time work on a "regular and continuing basis." *See* 20 C.F.R. §1572(c). However, an ALJ may "justifiably" consider a plaintiff's ability to conduct daily life activities in the face of complaints of disabling pain. *See Warner*, 375 F.3d at 392; *Blacha v. Sec'y of HHS*, 927 F.3d 228, 231 (6th Cir. 1990). While the undersigned acknowledges that the ability to perform limited daily activities, by itself, does not equate to the ability to perform full-time work, Plaintiff's argument ignores the reality that the ALJ did not rely solely on her

daily activities but cited numerous inconsistencies in the record, indicating that he appropriately considered all factors under SSR 16-7p. The differences between the activities reported by Plaintiff during her October 2014 psychological exam and her hearing testimony was merely one of many inconsistencies.

For example, in addition to Plaintiff's activity level, the ALJ considered and discounted Plaintiff's allegations because the objective evidence did not support her subjective complaints of a disabling level of pain and limitations. See 20 C.F.R. 404.1529(c)(2). Among the reasons for her alleged disability, Plaintiff listed heart disease, hypertension and hyperlipidemia, and polycythemia vera. (Tr. 24). However, the ALJ found Plaintiff's hypertension and hyperlipidemia to be non-severe impairments, meaning they did not impose more than minimal limitations, given that both conditions were well-controlled with medication with no related symptoms or evidence of organ damage. (Tr. 21). And, despite the fact that Plaintiff's heart disease was a "severe" impairment, the ALJ noted an array of normal findings during multiple examinations from 2014 through 2016. (*See* Tr. 24-26, citing clinical findings of normal ECG and echocardiogram, normal ejection fraction and left ventricular wall motion, denial of angina, reports of feeling well with no complaints of chest pain or shortness of breath, April 2016 statement that she was asymptomatic and May 2016 statement that coronary artery disease was controlled on medication). Similarly, although the ALJ accepted Plaintiff's blood disorder of polycythemia vera as a "severe" impairment, (Tr. 21), he also gave "great weight" to Dr. Mehta's opinion that Plaintiff had no limitations relating to her hematological impairments. (Tr. 27).

The undersigned will not repeat the analysis set forth above, in which Plaintiff's complaints of a disabling level of upper extremity limitations were contrasted with the

13

degree of functional limitation found by the ALJ. It is worth noting, however, the ALJ also contrasted Plaintiff's complaints of other disabling musculoskeletal symptoms with numerous "unremarkable" examination findings from 2014 through 2016. (Tr. 25, citing clinical findings of only mild tenderness over the lower facet area, normal range of motion, strength, reflexes, range of motion, motor skills, sensation and gait, and MRI findings that revealed only mild degenerative changes). The ALJ summarized inconsistencies between the evidence concerning Plaintiff's mental health allegations and her treatment records. (Tr. 26). Additionally, the ALJ considered Plaintiff's "conservative" treatment history and Plaintiff's response to that treatment. (Tr. 25-27, noting no evidence that an assistive device had been recommended or prescribed for Plaintiff, and that Plaintiff was stable on hydrocodone without significant side effects and that the medication allowed her to remain functional without significant issues).

Plaintiff's reply memorandum is silent as to the credibility issue. Having examined the record as a whole, the undersigned finds that the ALJ's evaluation of Plaintiff's subjective complaints is amply supported by substantial evidence and is therefore entitled to deference.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

                                                 */s Stephanie K. Bowman*
                                                 Stephanie K. Bowman
                                                 United States Magistrate Judge

14

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

MELISSA D. WHICKER-SMITH,                    Case No. 1:18-cv-52

    Plaintiff,                                                      Dlott, J.
                                                                            Bowman, M.J.
  v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).